Covenant Clearinghouse LLC v. D.R. Horton, Inc., 2026 NCBC 56.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV018285-400

COVENANT CLEARINGHOUSE
LLC, a Nevada limited liability
company,

        Plaintiff,

v.

D.R. HORTON, INC., a Delaware
Corporation,

        Defendant.

**ORDER AND OPINION
DEFENDANT'S MOTION TO DISMISS**

1. This matter is before the Court on the Rule 12(b)(6) and Rule 12(b)(7) motion to dismiss filed by defendant D.R. Horton, Inc. (ECF No. 21).

2. Having considered the complaint, the motion, and the arguments of counsel, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss as set forth below.

> *Clyde & Co US LLP, by Janice Holmes and Matthew J. Obiala, and Gallivan, White, & Boyd, P.A., by Christopher M. Kelly, for Plaintiff Covenant Clearinghouse LLC.*
>
> *Blanco, Tackabery & Matamoros, P.A., by Chad A. Archer and Ryan Dovel, for Defendant D.R. Horton, Inc.*

Houston, Judge.

## I.    <u>BACKGROUND</u>

3. The Court does not make findings of fact when ruling on a Rule 12(b)(6) motion and may, but is not required to do so, in resolving a Rule 12(b)(7) motion to dismiss. *See Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *2 (N.C. Super. Ct. July 26, 2018); *see* N.C. R. Civ. P. 52(a). Accordingly, for purposes of

context only, the Court summarizes the relevant allegations of the complaint.

4. Plaintiff Covenant Clearinghouse LLC is a Nevada limited liability company. (ECF No. 2, ¶ 1).

5. Defendant D.R. Horton is a Delaware corporation engaged in the business of real estate development. (ECF No. 2, ¶ 2).

6. Around 10 February 2010, John W. Johnson, Jr. and Billie Johnson (the "**Johnsons**" and, with their successors, the "**Declarants**") recorded a Declaration of Covenant (the "**Declaration**") with respect to certain real property that they owned in Guilford County, North Carolina, as described in Exhibit A and Schedule A to the Declaration and to which Plaintiff now contends the Declaration applies (the "**Property**"). (ECF No. 2, ¶ 5 & Ex. 1 (Ex. A at Book 7099, Page 1463)).

7. The Declaration contains various economic provisions that Plaintiff contends were designed to permit developers of the Property "to recoup development and infrastructure costs over time, rather than passing all those costs along to the first purchasers," purportedly entitling the Declarants (and their assignees or other successors) to a capital recovery fee equal to 1% of the sales price for each transfer of any parcel of the Property for a 99-year term. (ECF No. 2, ¶¶ 5–6).

8. The Johnsons ultimately assigned their alleged rights to receive the capital recovery fee to numerous third parties, including Gantwood, LLC; FCP Realty Interests III, LLC; First Strategic Capital NC, LLC; Allan Irwin; Michael Kahn; and Buckingham Trading, LLC (the "**Beneficiaries**"). (ECF No. 2, ¶ 7). However, Plaintiff does not allege that the Johnsons assigned or otherwise

transferred their remaining contractual rights or interests under the Declaration or that they no longer own parcels within the larger Property. (*See generally* ECF No. 2).

9.      Plaintiff is the designated trustee under the Declaration to act on behalf of the Beneficiaries and is compensated based on a percentage of the capital recovery fees that it recovers for the Beneficiaries. (ECF No. 2, ¶ 7).

10.      Under § 25 of the Declaration, the Declarants are permitted to terminate the Declaration under certain circumstances, as follows:

> Notwithstanding any provision or term to the contrary herein, this Declaration shall terminate and be rendered null, void and of no force and effect in its entirety with respect to any portion of the Property that is the subject of a Termination (hereinafter defined). As used herein, a "Termination" shall refer to a written document that (i) describes the portion of the Property to be Released and Exonerated from this Declaration (the "Released Property"); (ii) contains the following statement made under oath by the Party signing the Termination on behalf of the Declarant: *"Undersigned does swear and affirm upon personal knowledge that neither the Released Property, nor Declarant's Beneficial Interest, nor a Controlling Interest in Declarant, has been sold, conveyed or assigned since the date of filing the Declaration recorded in [insert recording information of this Declaration]"*; and (iii) is recorded in the OPR. Upon the sale, conveyance or assignment of the Released Property, Declarant's Beneficial Interest, or a Controlling Interest in Declarant, this Article 25 shall become void. A Termination shall be effective without the necessity of joinder of the Beneficiary(ies), the Trustee, an Owner, any non-profit designated in this Declaration, or any other party affected by this Declaration (jointly and severally the "Affected Parties"). Declarant shall be free to record a Termination notwithstanding any duty or obligation to the Affected Parties and regardless of any financial or legal effect such Termination may have on Affected Parties. Within ten (10) days from the date of filing a Termination, Declarant shall provide a copy of the filed Termination to the Trustee. If a valid Termination is recorded as provided above, the legal description of the Property, for purposes of this Declaration, shall be deemed amended, effective as of the date of recordation of the Termination, to exclude the Released Property. Upon Declarant's

written request, the Trustee and Affected Parties shall execute any document(s) necessary to effectuate this provision. This right to terminate is personal to the Declarant, and cannot be conveyed, assigned or otherwise exercised by another party (including, but not limited to, by any successor, heir or assign of Declarant).

(ECF No. 2, Ex. 1, § 25 (emphasis in original)).

11.    On 4 October 2012, the Johnsons executed a "Termination of Declaration of Covenant," which was recorded with the Guilford County Register of Deeds on 14 November 2012 (the "**Termination**"). (ECF No. 2, ¶ 9 & Ex. 2).

12.    In relevant part, the Termination provides as follows:

Further as required by Section 25 of the Declaration, the undersigned does swear and affirm, upon personal knowledge, that neither the Released Property, nor Declarant's Beneficial Interest, nor a Controlling Interest in Declarant (all as defined in the Declaration), has been sold, conveyed or assigned since February 10, 2010, the date of filing of the Declaration as recorded in the office of the Register of Deeds of Guilford County, North Carolina in Book 7099, Page 1452.

(ECF No. 2, Ex. 2 at 1).[1]

13.    The Termination is signed and stamped by notary Bettye B. Howard as of 4 October 2012 and, as to both John W. Johnson, Jr. and Billie Johnson, contains a certification by the notary that each person "personally appeared before me this day, acknowledging to me that he or she signed the foregoing document[.]" (ECF No. 2, Ex. 2 at 2).

14.    While the Termination contains a representation by the Johnsons that they "swear and affirm" to the information therein, the notarial certificate and the Termination lack any indication that the Johnsons were affirmatively sworn under

---

[1] The Termination attaches as an exhibit a description of the portion of the Property as to which it purports to terminate the Declaration.

oath or affirmed under penalty of perjury by the notary. (*See generally* ECF No. 2, Ex. 2).

15. Indeed, according to Plaintiff, "the Declarants did not swear under oath that none of the extinguishing events had occurred. Nor did Covenant Clearinghouse receive a copy of the Termination within ten days as required." (ECF No. 2, ¶ 9).

16. On 21 September 2018, Plaintiff recorded a "Notice of Assessment Obligation," which Plaintiff contends outlined the "most relevant terms of the capital recovery fee covenant." (ECF No. 2, ¶ 10).

17. On 12 December 2018, Plaintiff signed a "Correction Affidavit," which references the Termination and asserts that the Notice of Assessment Obligation was filed in error. (ECF No. 2, ¶ 10).

18. In 2021, Defendant began purchasing lots within the Property. Plaintiff alleges that Defendant built homes on these lots and sold them without disclosing the Declaration and without remitting the capital recovery fee contemplated by the Declaration. (ECF No. 2, ¶ 13).

19. In addition to Defendant, as alleged in the complaint, there is at least one other owner of lots within the Property: Stoney Creek Partners, LLC. (ECF No. 2, ¶¶ 10, 13).

20. Starting in April 2025, Plaintiff began recording a "Notice to Purchasers" on individual lots within the Property, informing prospective purchasers of the capital recovery fee under the Declaration. (ECF No. 2, ¶ 12).

21. Thereafter, in July 2025, Defendant demanded that Plaintiff cancel the Declaration, insisting that it had previously been terminated by the Johnsons. (ECF No. 2, ¶ 14).

22. Among other things, according to Plaintiff, Defendant affirmatively asserted that it "believes the Declaration violates North Carolina General Statutes section 93A-88.1, *et seq.*, and North Carolina General Statutes Chapter 39A, and that North Carolina courts generally disfavor these Declarations." (ECF No. 2, ¶ 15).

23. Plaintiff, on the other hand, contends that the Declaration is valid. (ECF No. 2, ¶¶ 16–26).

24. Conversely, while Defendant contends that the Termination was valid and effective, (ECF No. 2, ¶ 14), Plaintiff asserts that the Termination was ineffective and void, (ECF No. 2, ¶¶ 27–32).

25. In sum, the parties take differing views of certain statutory definitions and other provisions and their application under the circumstances of this case. (ECF No. 2, ¶¶ 19–26).

26. According to Plaintiff, the parties have exchanged various communications concerning these positions, with no resolution, and there is an actual, active, and genuine controversy between the parties as to these issues. (*See generally* ECF No. 2).

27. Plaintiff filed this suit on 15 August 2025, asserting causes of action for (i) a declaratory judgment that the Declaration is not void under N.C. Gen. Stat. §§ 93A-88.1 *et seq.,* (ii) a declaratory judgment that the Declaration is not void under

N.C. Gen. Stat. §§ 39A–1 *et seq.*, (iii) a declaratory judgment that the Termination filed by the Johnsons in 2012 was invalid and void *ab initio*, and (iv) breach of the Declaration for non-payment of capital recovery fees (i.e., breach of contract). (*See generally* ECF No. 2).

28.    Defendant then moved to dismiss under Rule 12(b)(6) and Rule 12(b)(7) of the North Carolina Rules of Civil Procedure. (ECF No. 21).

29.    The motion is fully briefed and ripe for resolution, and the Court resolves the motion on the briefing pursuant to Rule 7.4 of the Business Court Rules.

## II.    ANALYSIS

### a.    Rule 12(b)(6) Motion to Dismiss

30.    When considering a Rule 12(b)(6) motion, the Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991)).

31.    The Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).

32.    Further, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers"

regardless of the party that presents them. *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citation omitted). The Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citations omitted).

33. Dismissal on a Rule 12(b)(6) motion is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin*, 371 N.C. at 615 (citations omitted).

### i. Plaintiff's Declaratory Judgment Causes of Action

34. A motion to dismiss for failure to state a claim is seldom appropriate "'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557 (1988) (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439 (1974)).

35. "Rather, a motion to dismiss a declaratory-judgment claim is appropriate only when the complaint does not allege an actual, genuine existing controversy, which prevents a court from entering a purely advisory opinion." *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at \*30–31 (N.C. Super. Ct. Mar. 15, 2019) (internal quotation marks and citations omitted). The issue is not whether the

plaintiffs will prevail on their cause of action but, rather, "is only whether they have identified an actual, genuine controversy." *Id.* at *32 (citations omitted).

36. Here, Plaintiff asserts three declaratory judgment causes of action: one seeking a determination that the Declaration is not void under N.C. Gen. Stat. §§ 93A-88.1 *et seq.,* one seeking confirmation that the Declaration is not void under N.C. Gen. Stat. §§ 39A–1 *et seq.*, and one seeking a determination that the Termination is and was invalid and void. (*See generally* ECF No. 2).

37. Defendant makes myriad substantive arguments about why Plaintiff's causes of action fail, including that provisions of the Declaration are unenforceable or against public policy, that the Declaration lacks horizontal privity or does not touch and concern the land, or that the Declaration is not binding on Defendant. (ECF No. 22 at 11–17).

38. Those arguments, however, go to the merits of whether Plaintiff is entitled to the specific declaratory relief that it seeks—not whether Plaintiff has stated a claim upon which relief can be granted for a declaratory judgment.

39. For each of its causes of action, Plaintiff alleges facts sufficient to demonstrate an "actual genuine controversy" between Plaintiff and Defendant— namely, the parties' diametrically opposed positions.

40. As to the Declaration, Plaintiff pleads facts reflecting its contention that the Declaration is valid or at least "not void" and Defendant's position that the Declaration violates both N.C. Gen. Stat. §§ 93A-88.1 *et seq.* and N.C. Gen. Stat. §§ 39A–1 *et seq.* (ECF No. 2, ¶¶ 15–26).

41. Further, as to the Termination, Plaintiff has pleaded facts adequately alleging an actual and active controversy between the parties, with Defendant contending that the Termination was valid and effective, (ECF No. 2, ¶ 14), and Plaintiff asserting that the Termination was ineffective and void, (ECF No. 2, ¶¶ 27–32).

42. Considering the well-pleaded allegations of the complaint in the light most favorable to Plaintiff, the Court determines that Plaintiff adequately states claims for declaratory relief. *Bennett*, 2019 NCBC LEXIS 19, at *30–32. The Court therefore **DENIES** Defendant's Rule 12(b)(6) motion to dismiss as to these causes of action.

ii. Plaintiff's Breach of Declaration Cause of Action

43. For its final cause of action, Plaintiff asserts that Defendant has breached the terms of the Declaration by failing to remit to Plaintiff a percentage of Defendant's sales of parcels of the Property for capital recovery fees over the course of its ownership. (ECF No. 2, ¶¶ 33–42).

44. In support of its motion to dismiss, Defendant does not tailor its argument to the breach of declaration cause of action but instead contends that *all* of Plaintiff's causes of action are barred for the same reasons noted above. (ECF No. 22 at 10–17).[2] Defendant also argues that the Court should dismiss Plaintiff's causes of action because the Termination terminated the Declaration and any obligation to pay capital recovery fees under the Declaration. (ECF No. 22 at 17–23).

---

[2] Defendant's lone apparent reference to "breach" is its recitation of the existence of Plaintiff's cause of action. (ECF No. 22 at 8).

## 1. Applicability of N.C. Gen. Stat. § 39A–1 *et seq.*

45.     Defendant first contends that the Declaration "is invalid and unenforceable as a violation of North Carolina public policy" (i) because the General Assembly prohibited transfer fee covenants under N.C. Gen. Stat. § 39A–1 *et seq.*, thereby reflecting that such covenants are against public policy, and (ii) because the Declaration is an unreasonable restraint on alienation of property interests. (ECF No. 22 at 10–14).

46.     State law defines a "[t]ransfer fee covenant" to mean "a declaration or covenant purporting to affect real property that requires or purports to require the payment of a transfer fee to the declarant or other person specified in the declaration or covenant or to their successors or assigns, upon a subsequent transfer of an interest in the real property." N.C. Gen. Stat. § 39A–2(3).

47.     Under N.C. Gen. Stat. § 39A–3, "[a]ny transfer fee covenant . . . shall not run with the title to real property and is not binding on or enforceable at law or in equity against any subsequent owner, purchaser, or mortgagee of any interest in real property as an equitable servitude or otherwise." N.C. Gen. Stat. § 39A–3(a).

48.     However, Chapter 39A applies only "to (i) any transfer fee covenant that is recorded after July 1, 2010; (ii) any lien that is filed to enforce a transfer fee covenant that is recorded after July 1, 2010, or purports to secure payment of a transfer fee that is recorded after July 1, 2010; and (iii) any agreement imposing a private transfer fee obligation entered into after July 1, 2010." N.C. Gen. Stat. § 39A–4(a).

49.     While the General Assembly clarified that nothing in the statute should "be interpreted to mean that a transfer fee covenant recorded prior to July 1, 2010, is valid or enforceable," it also did not endeavor to retroactively declare such provisions invalid. N.C. Gen. Stat. § 39A–4(b).

50.     Here, Plaintiff alleges (and the Declaration itself reflects) that the Declaration was recorded on 10 February 2010, months before the 1 July 2010 trigger date invalidating transfer fee covenants against subsequent purchasers. N.C. Gen. Stat. § 39A–3(a), § 39A–4(a); (ECF No. 2, ¶ 5 & Ex. 1).

51.     Thus, on its face, Chapter 39A is not applicable to the Declaration. While Defendant attempts to analogize the circumstances of Chapter 39A to the 1973 Real Property Marketable Title Act, N.C. Gen. Stat. § 47B–1 *et seq.*, the Court does not at this time conclude "beyond a doubt that the plaintiff could not prove any set of facts to support [its] claim which would entitle [it] to relief." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480 (2004) (citation omitted). The Court thus **DENIES** Defendant's Rule 12(b)(6) motion to dismiss to the extent the motion is premised on its public policy argument.

### 2. Horizontal Privity and Touching and Concerning the Land

52.     Defendant next argues that the Declaration is unenforceable (and, presumably, that Declarant therefore cannot have breached its terms) "for lack of horizontal privity between the original covenanting parties, and because the transfer fee provision does not 'touch and concern' the land." (ECF No. 22 at 14–17).

53. As the parties both acknowledge in briefing, a "restrictive covenant is a real covenant that runs with the land of the dominant and servient estates only if (1) the subject of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and the burdens of the covenant to run with the land." *Runyon v. Paley*, 331 N.C. 293, 299-300 (1992) (citations omitted).

54. Considering the allegations of the complaint and the language of the Declaration in the light most favorable to the non-moving Plaintiff, while Defendant raises potentially viable arguments, the Court is again unable to conclude at the pleading stage "beyond a doubt that the plaintiff could not prove any set of facts to support [its] claim which would entitle [it] to relief." *Hunter*, 162 N.C. App. at 480 (2004) (citation omitted). The Court therefore **DENIES** Defendant's Rule 12(b)(6) motion to dismiss to the extent the motion is premised on Defendant's arguments concerning horizontal privity and touching and concerning the land at issue.

### 3. Validity of the Termination

55. As its final Rule 12(b)(6) argument, Defendant asserts that the Termination was valid and properly terminated any obligations Defendant might otherwise have under the Declaration. (ECF No. 22 at 17–23).

56. Plaintiff alleges in the complaint that the Johnsons signed and recorded the Termination. (ECF No. 2, ¶ 9). The Termination, as incorporated into and relied upon in the complaint, reflects on its face that the Johnsons did affirmatively "swear

and affirm, upon personal knowledge, that neither the Released Property, nor Declarant's Beneficial Interest, nor a Controlling Interest in Declarant (all as defined in the Declaration), ha[d] been sold, conveyed or assigned since" the Declaration was recorded. (ECF No. 2, ¶ 9 & Ex. 2 at 1).

57.     Under the Declaration, any such termination must be "made under oath," (ECF No. 2, Ex. 1, ¶ 25), and the parties devote much of their briefing to the issue of whether the Termination was signed under oath.

58.     In common usage, the phrase "under oath" means "having made a formal promise to tell the truth in a court of law." UNDER OATH, *Merriam-Webster* (last visited 18 June 2026), https://www.merriam-webster.com/dictionary/under%20oath; *see also* OATH, *Black's Law Dictionary* (12th ed. 2024) (defining "oath" as "[a] solemn declaration that one's statement is true or that one will be bound to a promise, usu[ally] incorporating a swearing to God or to some other revered person or thing. The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken. *The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false*." (emphasis added)).

59.     Under North Carolina law, an "oath" is defined as follows:

> A notarial act which is legally equivalent to an affirmation and in which a notary certifies that at a single time and place all of the following occurred:
>
> a.    An individual appeared in person before the notary.
> b.    The individual was personally known to the notary or identified by the notary through satisfactory evidence.

c. The individual made a vow of truthfulness on penalty of perjury while invoking a deity or using any form of the word swear.

N.C. Gen. Stat. § 10B-3(14).

60. Thus, the mere fact that a statement is unilaterally sworn does not render it one made under oath. Rather, both state law and common linguistic usage contemplate that oaths will be administered by an officer or other person with authority to administer oaths. This is most commonly reflected in case law addressing affidavits. *See, e.g.*, *In re S.E.T.*, 375 N.C. 665, 672 (2020) ("An affidavit is '(a) written or printed declaration or statement of facts, made voluntarily, and confirmed by the *oath or affirmation* of the party making it, *taken before an officer having authority to administer such oath*.'" (citations omitted) (emphasis added)); *In re Ingram*, 74 N.C. App. 579, 580–81 (1985) ("Documents which are not under oath may not be considered as affidavits. The requirements of G.S. 122–58.3 must be followed diligently . . . . Where an involuntary commitment statute requires an oath and the requirement is not complied with, the person involuntarily committed is deprived of liberty without legal process. The petition for involuntary commitment could not be treated as an affidavit because it was not confirmed by *oath or affirmation before a duly authorized certifying officer*." (internal citations omitted) (emphasis added)).

61. Historically, North Carolina courts have strictly construed the requirements for properly making affidavits and other sworn statements under oath. *Cf. Burgess v. Vitola*, 2008 NCBC LEXIS 7, at *16 (N.C. Super. Ct. Mar. 26, 2008)

(citing *First Citizens Bank & Trust Co. v. Nw. Ins. Co.,* 44 N.C. App. 414, 420 (1980); *Short v. City of Greensboro,* 15 N.C. App. 135, 138 (1972)).[3]

62.     Indeed, state law has long set forth specific requirements for the administration of oaths. N.C. Gen. Stat. § 11–2 (requiring "the party to be sworn to lay his hand upon the Holy Scriptures, in token of his engagement to speak the truth and in further token that, if he should swerve from the truth, he may be justly deprived of all the blessings of that holy book and made liable to that vengeance which he has imprecated on his own head"); *see also* N.C. Gen. Stat. § 11–3 (providing an alternative method for administration of oaths for individuals who are "conscientiously scrupulous of taking a book oath"); *ACLU of N.C., Inc. v. State*, 181 N.C. App. 430, 431 (2007) (explaining that N.C. Gen. Stat. § 11–2 is "the statute that describes the procedure for the administration of oaths").

63.     As a result, for at least a century and a half, North Carolina law has generally recognized that, to be made "under oath," a statement or writing should be made before, and administered by, an officer properly authorized to take oaths and in a manner reflecting the intended solemnity and legal enforceability of an oath. *See, e.g.*, *State v. Hollis*, 295 N.C. App. 224, 232 (2024) (explaining that "[t]he purpose of an oath before a notary is to impart to the affiant the importance of stating the

_____

[3] While *Burgess* more specifically addresses the issue of whether an unsworn declaration could be treated as an affidavit, that specific issue was recently remedied by the North Carolina General Assembly. N.C. Gen. Stat. § 7A–98 (permitting the use of unsworn declarations made under penalty of perjury in certain circumstances). North Carolina law has also long permitted the use of an affirmation in lieu of an oath when the "person to be sworn shall have conscientious scruples against taking an oath" as otherwise prescribed by law. N.C. Gen. Stat. § 11–4.

truth, and explicit acknowledgement of the penalty of perjury evinces a similar level of credibility");[4] *Schoolfield v. Collins*, 281 N.C. 604, 612 (1972) (determining that a pleading was appropriately verified and under oath where it was "sworn to and subscribed before a notary public," as "an officer having authority to administer such oath" (citations and quotation marks omitted)); *cf. Craver v. Zoning Bd. of Adjustment*, 267 N.C. 40, 42 (1966) (determining that a board chairman was authorized to administer oaths and that statements made by witnesses without administration of a formal oath ordinarily would not have been competent evidence absent waiver); *Pearre v. Folb*, 123 N.C. 239, 239 (1898) (determining that a "proceeding did not constitute a valid oath, under the laws of North Carolina" where the formalities of an oath were not observed); *Morgan v. Hubbard*, 66 N.C. 394, 395 (1872) (concluding that "the simple declaration of the defendant . . . was not under oath" and could not appropriately be considered as evidence where it "had neither the solemnity of an oath, nor the test of a cross-examination"); *Carr v. Stanley*, 52 N.C. 131, 132 (1859) (concluding that a person's written certificate "was nothing more than a written declaration, made by him, not under oath"); *see also* N.C. Gen. Stat. § 11–2.

64. Here, as noted above, while the Johnsons unilaterally "swear and affirm" to the information in the Termination, the document does not contain

---

[4] In *Hollis*, the Court of Appeals affirmed the trial court's admission of statements "made under penalty of perjury" in lieu of sworn affidavits under oath. In doing so, the Court of Appeals nonetheless reiterated the general expectation that oaths should be made before a person duly authorized to administer oaths and that proper oaths carry consequences, such as the penalty of perjury, if they are untrue. *See Hollis*, 295 N.C. App. at 229, 232.

language indicating that notary Bettye B. Howard administered a formal oath or affirmation to the Johnsons as required by statute for a notarial oath or affirmation or as otherwise contemplated by common usage of the term "under oath." *See* N.C. Gen. Stat. § 10B-43(a) (requiring notarial certificates for oaths and affirmations to contain a statement substantially in the form of "Signed and sworn to before me this day . . ." or "Sworn to and subscribed before me this day . . ."); N.C. Gen. Stat. § 10B-43(d) (permitting similar language for affirmations); (*see generally* ECF No. 2, Ex. 2 at 2).

65. Though it is possible that the notary did actively administer an oath and that Defendant will be able to prove as much following discovery, no such notarial oath administration is apparent from the complaint or the face of the Termination. (ECF No. 2, Ex. 2 at 2).

66. In fact, Plaintiff affirmatively alleges that the Termination was *not* signed under oath. (ECF No. 2, ¶ 9).

67. Thus, again construing the well-pleaded factual allegations of the complaint in the light most favorable to Plaintiff, the Court **DENIES** Defendant's Rule 12(b)(6) motion to dismiss to the extent it is premised upon the effectiveness of the Termination. *Hunter*, 162 N.C. App. 477, 480 (2004) (citation omitted).

### b. <u>Rule 12(b)(7) Motion to Dismiss</u>

68. Having addressed Defendant's Rule 12(b)(6) motion to dismiss, the Court turns to its Rule 12(b)(7) motion to dismiss for failure to join necessary parties, which Defendant also frames in its briefing as a request for the alternative relief of

the joinder of proper (even if not necessary) parties.[5] (ECF No. 37 at 13–14).

69.     Under Rule 19(b) of the North Carolina Rules of Civil Procedure, "when a complete determination of [a] claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action." N.C. R. Civ. P. 19(b). Further, under N.C. Gen. Stat. § 1–260, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." N.C. Gen. Stat. § 1-260.

70.     "A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence." *Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 452 (1971) (citing *Strickland v. Hughes*, 273 N.C. 481 (1968)).

71.     Thus, for a party to be necessary, its "interest must be such that no decree can be rendered which will not affect" the party. *Wall v. Sneed*, 13 N.C. App. 719, 724 (1972) (citing *Gaither Corp. v. Skinner*, 238 N.C. 254 (1953)). "The term 'necessary parties' embraces all persons who have or claim material interests in the subject matter of a controversy, which interests will be directly affected by an adjudication of the controversy." *Id.* (quoting *Equitable Life Assurance Soc'y v. Basnight*, 234 N.C. 347, 352 (1951)).

---

[5] Though Defendant's motion does not expressly seek the relief of joinder of proper parties as an alternative to its motion to dismiss for failure to join necessary parties under Rule 12(b)(7), inasmuch as (i) the Court has discretion to join proper parties on its own motion at any time and (ii) Defendant has requested that relief in its briefing, the Court addresses the joinder of proper parties in the exercise of judicial discretion. *See, e.g.*, *Colbert v. Collins*, 227 N.C. 395, 396 (1947) (per curiam).

72. Conversely, a "proper party is one whose interest may be affected by a decree, but whose presence is not essential in order for the court to adjudicate the rights of others." *Crosrol Carding*, 12 N.C. App. at 451–52; N.C. R. Civ. P. 20. While a case may be resolved on the merits without the presence of a proper party, in its discretion, a court may require the joinder of such a party. *Id.* (citation omitted); N.C. Rule Civ. P. 21 ("[P]arties may be dropped or added by order of the court on motion of any party *or on its own initiative* at any stage of the action."); *see High Point Bank & Trust Co. v. Highmark Props., LLC*, 368 N.C. 301, 303 (2015).

73. For example, a person owning real property burdened by a restrictive covenant may be a necessary party if the covenant is mutually enforceable or if a court's resolution of an action involving the covenant would otherwise "extinguish[] property rights without giving the property owner an opportunity to be heard." *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 440 (2000). However, the assessment of monetary fees does not inherently extinguish a property right sufficient to make the owner a necessary party, even when the court's determination of the merits might affect potential, unfiled suits for monetary damages by absent parties. *Compare Midsouth Golf, LLC v. Fairfield Harbourside Condo. Ass'n*, 187 N.C. App. 22, 27–30 (2007), *and Wallach v. Linville Owners Ass'n*, 234 N.C. App. 632, 638–39 (2014), *with Karner*, 351 N.C. at 440, *and Page v. Bald Head Ass'n*, 170 N.C. App. 151 (2005).

74. "Whenever . . . a fatal defect of parties is disclosed, the Court should refuse to deal with the merits of the case until the absent parties are brought into

the action[.]" *Wall*, 13 N.C. App. at 723 (quoting *Morganton v. Hutton & Bourbonnais Co.*, 247 N.C. 666, 668 (1958)). However, "dismissal under Rule 12(b)(7) is proper only when the defect cannot be cured, and the court ordinarily should order a continuance for the absent party to be brought into the action and plead." *Howell v. Fisher*, 49 N.C. App. 488, 491 (1980) (citations omitted); *see Presnell v. Trollinger Inv. Co.*, 20 N.C. App. 722, 725–726 (1974).

75. In its briefing, Defendant contends that there are three groups of necessary parties to this action: the "multiple" unnamed owners of other lots within the Property that would be burdened by the Declaration, the Beneficiaries, and the Declarants. (ECF No. 22 at 24–25). The Court addresses each in turn.

### i. Other Lot Owners Within the Property

76. Defendant first contends that owners of other lots within the Property are necessary parties because a determination as to the validity of the Declaration would affect their property rights.

77. While disputing whether they are necessary parties, Plaintiff concedes that "other homeowners [within the Property] might be considered proper parties— those whose interests are separable and may be affected by a judgment in this suit." (ECF No. 31 at 27). Defendant likewise agrees that it would be appropriate to join "all other potentially impacted lot owners as proper parties." (ECF No. 37 at 14).

78. Though it is unclear from the complaint how many other persons or entities own lots within the Property, the complaint identifies at least one other such owner as Stoney Creek Partners, LLC. (ECF No. 2, ¶ 10).

79. According to the allegations in Plaintiff's complaint and the language of the Declaration, under Plaintiff's theory, lot owners within the Property are generally required "to pay the Declarants (and/or their assignees) a capital recovery fee of 1% of the sales price on each transfer of the property for 99 years." (ECF No. 2, ¶ 6; *see also* ECF No. 2, Ex. 1, ¶ 5).

80. Plaintiff's request is largely one that the Court declare that the Declaration and covenants therein are valid—or at least not void. Conversely, most prior appellate case law on this subject was in the context of declaring covenants invalid, with courts analyzing whether nonparties might be at risk of losing property rights. *Compare, e.g.*, *Karner*, 351 N.C. at 440 (explaining that a party may be a necessary party if resolution of a real property covenant would otherwise "extinguish[] property rights without giving the property owner an opportunity to be heard"), *with Midsouth Golf*, 187 N.C. App. at 29–30 ("While invalidation of the covenant in the present case could have some effect on nonparty property owners in Fairfield Harbor, invalidation of the covenant would not deprive them of any property right, which is required under *Karner* to make them necessary parties.").

81. Here, the Court need not determine whether the non-party property owners are necessary parties, as the Court determines that they are at least proper parties whom the Court will order joined as parties in the exercise of the Court's judicial discretion. *Wallach*, 234 N.C. App. at 637 ("Whether proper parties will be ordered joined rests within the sound discretion of the trial court." (citation and internal quotation marks omitted)); *Colbert*, 227 N.C. at 396 ("[I]f the parties sought

to be made parties defendant are proper parties the order was within the discretion of the Court and not subject to review, or if, on the other hand, such parties are necessary parties, without whose presence a complete determination of the controversy could not be had, the Court was required to have them brought in as parties defendant.").

82.    The Declaration purports to bind all lot owners within the Property and to require those parties to pay a fee upon the transfer of their respective lots. (ECF No. 2, Ex. 1, ¶ 5).

83.    Plaintiff seeks to have the Declaration declared "not void" on several bases, (*see generally* ECF No. 2), and the Court's resolution of Plaintiff's request for declaratory relief is likely to affect those property owners by determining their obligations, if any, under the Declaration. *See Crosrol Carding*, 12 N.C. App. at 451 (explaining that a "proper party is one whose interest may be affected by a decree"). For example, if the Court determined that the Declaration was valid or otherwise "not void," the Court would be ruling on bases for invalidation that those property owners might otherwise raise in separate litigation and that could result in a determination that those owners' interests are subject to the Declaration. Such circumstances warrant joining those property owners as parties in this action.

84.    As a result, in its discretion, the Court determines that the other owners of lots or parcels within the Property are, at a minimum, proper parties to this action and that it is appropriate to order those lot owners joined as parties in this action.

85.    Thus, to the extent that the Court orders Plaintiff to join as proper parties to this action all owners of lots or other parcels within the Property who are not otherwise parties to this action, the Court **GRANTS IN PART** Defendant's motion.

### ii.    Beneficiaries

86.    Defendant also contends that the Beneficiaries are necessary parties because trust beneficiaries are necessary parties to trust disputes.

87.    "When dealing with a trust, the general rule in suits, respecting the trust property, brought either by or against the trustees, [is that] the . . . beneficiaries as well as the trustees also, are necessary parties." *Hasselmann v. Barnes*, 207 N.C. App. 373, 374 (2010) (quoting *Dunn v. Cook*, 204 N.C. App. 332, 337 (2010) (internal quotation marks omitted)); *First Nat'l Bank v. Thomas*, 204 N.C. 599, 602 (1933) ("It is a general and well-established rule that, in suits by or against a trustee for the recovery or defense of property, the beneficiaries are necessary parties." (citation and internal punctuation omitted)).

88.    Plaintiff argues that, because § 12 of the Declaration grants it a general right "to undertake on behalf of Beneficiaries, as agent thereof, any action [that Plaintiff] deems reasonably necessary or appropriate to prosecute, defend, administer and exercise rights and obligations arising out of or related to th[e] Declaration," it therefore has the right as trustee to bring this suit without joining the Beneficiaries. (ECF No. 2, Ex. 1, ¶ 12).

89. Section 9 of the Declaration, however, imposes a specific restraint on Plaintiff's ability to bring suit to recover "Unpaid Reconveyance Fees." (ECF No. 2, Ex. 1, ¶ 9). Specifically, Plaintiff is required to have "prior written consent of the Beneficiaries then holding 51% or more of the Beneficial Interests (which consent shall include instructions pertaining to payment of enforcement costs and disposition of Lien Property ultimately acquired at any foreclosure)" before bringing an action to recover unpaid reconveyance fees. (ECF No. 2, Ex. 1, ¶ 9(f)).

90. On its face, this requirement would apply then to at least Plaintiff's breach of contract cause of action, which seeks to recover allegedly unpaid reconveyance fees. (ECF No. 2, ¶¶ 33–42 (alleging non-payment of capital fees); ECF No. 2 at 9 (seeking recovery of unpaid capital recovery fees); ECF No. 2, Ex. 1, ¶ 9(f)).

91. Plaintiff has not alleged (and there is no indication) that Plaintiff obtained such prior written permission from the Beneficiaries. (*See generally* ECF No. 2). Thus, even if Plaintiff were otherwise permitted to bring suit without the Beneficiaries based on the general grant of authority under the Declaration, there is currently no basis on which the Court could reasonably conclude that Plaintiff has obtained the Beneficiaries' approval to proceed with this litigation without their presence as parties.[6]

---

[6] Defendant does not argue that the lack of such an allegation deprives Plaintiff of standing under Rule 12(b)(1), nor does Defendant argue that it provides a basis for dismissal under Rule 12(b)(6). Accordingly, the Court does not address any such arguments at this time. However, inasmuch as the Court requires Plaintiff to file an amended complaint to join additional parties, Plaintiff is **DIRECTED** to state in its amended complaint whether it has obtained prior written approval for this action.

92. Further, even if they were not necessary parties, the Beneficiaries would be proper parties, and the Court would join them as parties to the action in its discretion on that basis. *See* N.C. R. Civ. P. 21 (permitting the Court to order joinder of a proper party on its own motion); *Colbert*, 227 N.C. at 396; *see also* N.C. R. Civ. P. 20.

93. To the extent that it requires Plaintiff to join the Beneficiaries as parties to this action, the Court therefore **GRANTS** Defendant's motion.

### iii. The Johnsons

94. Defendant further contends that the Johnsons, as the initial Declarants, are necessary parties to the action because they "executed both the Declaration and the Termination." (ECF No. 22 at 25).

95. Though Plaintiff alleges that the Johnsons assigned their rights to the capital recovery fees to the Beneficiaries, there are no allegations that the Johnsons have assigned their entire contractual interest or other interests under the Declaration to the Beneficiaries, nor (aside from the Termination) is there any indication that the Johnsons are otherwise no longer parties to the Declaration. (*See generally* ECF No. 2).

96. Accordingly, it appears that the Johnsons remain parties to the Declaration and Termination with a material interest in the subject matter of this controversy and that the Court's resolution of the outstanding causes of action in this case would directly affect the Johnsons' interests, such that they are necessary parties to this action. *See N.C. Monroe Constr. Co. v. Guilford Cnty. Bd. of Ed.*, 278

N.C. 633, 640 (1971). This is particularly the case with respect to the Court's potential determinations of whether the Declaration and Termination are valid or void and whether there has been a breach of the Declaration.

97.     Further, even if the Johnsons were not necessary parties, the Court determines that they are proper parties whose interests at least may be affected by the Court's resolution of this action and that it is appropriate to join them on that alternative basis in the Court's discretion. *See id.* at 639–40 (addressing proper parties).

98.     Thus, inasmuch as it requires Plaintiff to join the Johnsons as parties to this action, the Court **GRANTS** Defendant's motion.

## III.    CONCLUSION

99.     Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion as set forth above.

100.    In the exercise of judicial discretion, the Court **ORDERS** that, within thirty (30) days of entry of this Order and Opinion, Plaintiff shall file an amended complaint and join as parties to this action (i) all current owners of lots or other parcels of real property within the Property who are not otherwise parties to this action, (ii) the Johnsons, and (iii) the Beneficiaries.

        **SO ORDERED**, this 19th day of June 2026.

                                        /s/ Matthew T. Houston
                                        Matthew T. Houston
                                        Special Superior Court Judge
                                         for Complex Business Cases